# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| **SEVEN NETWORKS, LLC** | |
| Plaintiff, | Civil Action No. 2:19-cv-115-JRG |
| v. | |
| **APPLE INC.,** | JURY TRIAL |
| Defendant. | |

## APPLE INC.'S MOTION TO COMPEL FORTRESS INVESTMENT GROUP LLC TO COMPLY WITH APPLE INC.'S THIRD-PARTY SUBPOENA

Apple respectfully seeks an order directing non-party Fortress Investment Group, LLC ("Fortress") to comply with Apple's subpoenas *duces tecum* and *ad testificandum* served September 13, 2019 about the valuation of SEVEN, its asserted patents, and licensing of the same.

I.  **FACTUAL & PROCEDURAL BACKGROUND**

In July 2015, Fortress—a New York-based investment management firm with over $41 billion dollars in assets under management—acquired a controlling interest in SEVEN, and tried to monetize SEVEN's patent portfolio via litigation, including in suits in this district against Samsung, Google, and ZTE.[1] Fortress and SEVEN then pursued Apple in the present lawsuit, alleging infringement of sixteen SEVEN patents.[2] The licensing and valuation of these patents is centrally relevant to the parties' damages arguments in this case. So, on September 13, 2019, Apple served Rule 45 subpoenas on Fortress, seeking documents and testimony regarding, *inter alia*, the valuation of SEVEN and its patents, and the licensing of those patents. Ex. A. The subpoenas sought documents by October 11 and a deposition on November 1. *Id.*

On September 23, 2019, counsel for SEVEN said it would represent Fortress as to Apple's subpoenas, and Apple agreed to postpone the deposition until after addressing any objections Fortress might raise to the document requests. The document production deadline then passed without any objections, documents, or extension requests. On October 28, Fortress said it would start producing documents the week of November 4. *Id.* It did not. Apple then wrote Fortress asking for production by November 15, more than two months after serving the subpoenas. *Id.*

On November 15, Fortress served untimely objections and produced some documents, but demanded a meet and confer on nearly three-quarters of Apple's requests. The limited production was deficient, including little more than: (a) documents executed in July 2015 to acquire SEVEN;

---

[1] *E.g., SEVEN Networks v. Google LLC,* No. 2:17-cv-442-JRG, Dkt. 570 at 5-6 (E.D. Tex. Dec. 11, 2018).
[2] Reduced to ten patents on April 7, 2020.

and (b) the transcript of and exhibits to the deposition of Erez Levy (lead Fortress business person on SEVEN investment pre- and post-closing who also oversees the business aspects of Fortress's investment in SEVEN) in a prior litigation.  Notably absent were:

- any materials relating to or constituting Fortress's due diligence in preparation for the acquisition of SEVEN;

- any draft agreements, investment memoranda, or materials concerning expected investment returns prior to and during its acquisition of SEVEN;

- internal Fortress documents concerning its determination to acquire SEVEN or the subsequent performance of its investment therein, including any analyses or reports to fund managers, LPs, or any investment committee(s);

- any materials concerning any benefits Fortress has received from SEVEN's patent licensing activities, including documents concerning the negotiation and resolution of SEVEN's licensing agreements and lawsuits against Google, Samsung, and/or ZTE;

- any documentation regarding any effort by Fortress or SEVEN to license patents to any other entity; and

- any email communications (which Fortress ***expressly refused*** to produce).

Apple has repeatedly met and conferred with Fortress regarding the requested discovery. On December 11, Fortress's counsel said it was discussing with Fortress what additional non-privileged documents existed.  The parties reconvened on December 16, and Fortress committed to provide a privilege log by December 30.  The parties conferred again on December 19; Fortress re-affirmed it would provide a log by December 30.  As to Fortress documents relating to its due diligence prior to acquiring SEVEN, Fortress would only agree to produce: (a) less than five documents, subject to redaction of allegedly privileged material and (b) additional documents related to Fortress's pre-acquisition diligence (to the extent not duplicative of SEVEN's own production).  As to post-acquisition documents—e.g., reports to fund managers or investors, evaluation of the investment's performance—Fortress said it was not aware of any such non-privileged documents that were not emails, which Fortress then refused to produce, despite

admitting Fortress primarily conducts business via email.

Apple thus reiterated its request for email, offering to have the email searches count against the allocation of SEVEN email custodians to which Apple is entitled under the Court's ESI order. Fortress refused. However, on January 16, 2020, Fortress relented in principle, agreeing to provide email for only two custodians. On January 28, Fortress provided descriptions of six potential email custodians. To wisely select the two Fortress custodians from which it would seek email, Apple awaited Fortress's long-promised privilege log, which might reveal the most relevant individuals.

But Fortress repeatedly failed to provide the promised log. Fortress did not serve it by December 30. Apple followed-up on January 6, and Fortress said it would produce the log by January 10. It did not. Apple followed-up again on January 24 and February 7; Fortress did not respond. On February 19, Fortress finally provided the requested privilege log, which had only eleven entries and did not identify a single plausible source of the attorney-client and work product privileges asserted for every logged document. Following a March 4 conference on these issues, Fortress said it would provide a revised log on March 6. It did not. Finally, on March 10, Fortress produced a revised log with only nine entries and updated descriptions of the withheld documents.

On February 28, Apple asked that Fortress search the email of two custodians, providing fifteen detailed terms for each: (1) Erez Levy; and (2) Eran Zur, founder and head of Fortress IP who was involved at an executive level with Fortress' management of SEVEN investment both pre- and post-closing. Eleven days passed, after which, Fortress objected to nearly all of Apple's terms without providing any proposed changes or hit counts showing that the terms would yield overly burdensome results. Apple agreed to narrow several of its proposed terms on a March 18 meet-and-confer, and Fortress provided search results on March 25. Fortress again objected to nearly every term, even though many results were within the range for which Apple and SEVEN

had previously produced resulting emails.  On March 30, Apple agreed to further narrow several terms.  But, on April 3, Fortress rejected the terms as not narrow enough, even where they yielded hit counts similar to those the parties deemed reasonable when producing their own emails—i.e., no more than 10,000 hits per term (prior to de-duplication), and Fortress did not even provide hit counts for all of Apple's revised terms.  Fortress said that if Apple did not further narrow its terms, Fortress would only produce a limited set of documents it unilaterally deemed reasonable.  As a final compromise attempt, Apple offered on April 14 to further narrow any terms that yielded more than 10,000 hits, if Fortress would produce the resulting documents.  Fortress again refused.  On April 20, Fortress stated it would only produce emails for terms returning less than 1,000 hits— 9,000 fewer than the results for which Apple and SEVEN produced resulting emails.[3]

As to non-email discovery, on January 16, Fortress produced about 1,400 "documents," many of which were single-page scans of larger documents and most of which were documents created by **SEVEN** pre-dating the acquisition (which Fortress presumably received as part of its pre-acquisition diligence).  Only a handful of the documents appear to be Fortress-created.  On March 13, Fortress produced twelve more documents—many of which are iterative versions of the same investor presentation and many of which bear heavy redactions based on Fortress's unilateral relevance (not privilege) determinations.[4]

Still absent from Fortress's production (email or otherwise) are: (1) materials about Fortress's internal due diligence in preparation for the acquisition of SEVEN; (2) draft agreements, additional investment memoranda, or other materials about expected investment returns prior to

---

[3] With respect to the few search terms which Fortress reports are still returning more than 10,000 results, Apple is working to revise those terms to reduce the results.

[4] The parties dispute the appropriateness of the redactions, but Apple has agreed to accept a narrative description of the redacted materials, without prejudice to revisiting the issue should Fortress deposition testimony reveal further need.

and during its acquisition of SEVEN; (3) internal Fortress documents about its decision to acquire SEVEN or the subsequent performance of its investment therein, including any analyses or unredacted reports to fund managers, LPs, or any investment committee(s); and (4) materials about any benefits Fortress has received from SEVEN's patent licensing activities.

## II. ARGUMENT

The scope of discovery encompasses "any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." *See* Fed. R. Civ. P. 26(b). Once the movant shows that requested materials are relevant, the burden shifts to the party opposing discovery to show why the request is "irrelevant, overly broad, or unduly burdensome or oppressive and thus should not be permitted." *Weatherford Tech. Holdings, LLC v. Tesco Corp.*, No. 2:17-CV-00456-JRG, 2018 WL 4620634, at *1 (E.D. Tex. Apr. 27, 2018).

The requested documents are plainly relevant. SEVEN seeks as damages a "reasonable royalty," which is calculated based on a "hypothetical negotiation" that "attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). Documents showing how a purchaser—which controls the patent holder—values the asserted patents, including documents evaluating the asserted patent portfolio and expected returns from licensing, are directly relevant to this damages analysis. *See, e.g., Oracle Am., Inc. v. Google Inc.*, No. 10-03561 WHA, 2012 WL 877125, *3 (N.D. Cal. Mar. 15, 2012) (admitting evidence regarding how purchaser valued patent portfolio as relevant to analyzing the reasonable royalty); *see also Viasat, Inc. v. Space Sys./loral, Inc.,* No. 12-CV-0260-H (WVG), 2013 WL 12061801, at *4–5 (S.D. Cal. Jan. 14, 2013) (permitting third-party discovery from patentee-purchaser of documents related to valuation, purchase agreements, and negotiations as relevant to damages).

Fortress's failure to serve timely objections to the subpoena waived them. "A person

commanded to produce documents . . . may serve on the party or attorney designated in the subpoena a written objection" to the same, but any such objection "must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(d)(2)(B). "In the majority of cases, a person—whether a traditional party (i.e., a plaintiff or defendant) or a non-party—waives objections if he/she/it fails either to serve timely objections on the party seeking discovery or to file a timely motion with the court." *In re Ex Parte Appl. of Grupo Mexico SAB de CV*, No. 3:14-MC-0073-G, 2015 WL 12916415, at *3 (N.D. Tex. Mar. 10, 2015). Apple's subpoena set compliance by October 11. Fortress served objections on November 15, only after Apple repeatedly followed up. Fortress offers no explanation for the delay.

### A. Fortress Must Produce Responsive, Non-Privileged Documents

Fortress should be compelled to search diligently for and produce responsive, non-privileged documents regarding its investment in SEVEN, including related to (at a minimum) Fortress's valuation of SEVEN, the performance of the investment, and documents regarding its attempts to negotiate licenses for SEVEN's patents. Fortress's document production to-date is deficient. Other than emails with ZTE about scheduling settlement discussions, Fortress originally produced almost nothing post-dating the acquisition or generated by Fortress itself. And on the parties' December 19, 2019 meet and confer, Fortress's counsel claimed ***that was it***—that Fortress had no other responsive, non-privileged, non-email documents because Fortress does its business primarily via email. Apple questioned this claim, seeking to understand how Fortress—a large investment company that touts its diligence and targeted investments to mitigate risk[5]—could have no post-investment analyses, no Fortress-generated documents, and only 136 responsive pre-

---

[5] *See, e.g.,* https://www.fortress.com/businesses/private-equity (describing Fortress's investing approach of "making control-oriented investments") and http://fortress.com/about ("Investment performance is our cornerstone – we strive to generate strong risk adjusted returns for our investors over the long term.").

- 6 -

acquisition documents regarding its substantial investment in SEVEN.

Apple's skepticism proved well-founded, as Fortress produced a handful of responsive, non-email documents on January 16 and March 13, 2020. But still missing are internal diligence documents, draft agreements, any documents describing licensing activity, and any additional internal valuations or analyses of investment returns from SEVEN's litigation campaigns against Google, Samsung, and ZTE (beyond the iterative versions of one presentation Fortress belatedly produced). It strains credibility that no further responsive documents exist about Fortress's years-long investment in and control of SEVEN. If Fortress maintains as much, it should provide a prepared witness on its document storage, management, retention, and collection so Apple may test the veracity of this claim.

### B.  Fortress Must Produce Responsive Email

Despite its promise to provide custodian email, Fortress has failed to do so. Email from relevant custodians is indisputably relevant and responsive to Apple's subpoena. Indeed, while Fortress initially refused to provide email, it agreed in January 2020 to do so for two custodians, after admitting that Fortress does most of its business via email. Since then, Apple has repeatedly sought the responsive email, asking for information regarding custodians (in the absence of the repeatedly promised privilege log) and providing search terms. Fortress repeatedly rejects Apple's proposed searches. Apple has twice narrowed its terms to address Fortress's objections, but Fortress continues to reject Apple's proposals in favor an arbitrary 1,000-emails-per-search cap. Discovery currently closes June 1. Apple cannot wait any longer.

### III.  CONCLUSION

Apple respectfully requests this Court order Fortress to: (1) search for and produce any non-privileged responsive email and non-email documents and (2) provide a corporate deposition witness regarding its document storage, management, retention, and collection efforts.

Date: April 28, 2020	Respectfully submitted,

By:	FISH & RICHARDSON P.C.

*/s/ Noah C. Graubart*
Ruffin Cordell (Lead Counsel)
cordell@fr.com
Texas Bar Number 04820550
Indranil Mukerji
mukerji@fr.com
Massachusetts Bar Number 644059
Sun Young Park
New York Bar Number 5412739
apark@fr.com
FISH & RICHARDSON P.C.
1000 Maine Ave SW, Suite 1000
Washington, DC 20024
Telephone: 202-783-5070
Facsimile: 202-783-2331

Benjamin C. Elacqua
Texas Bar Number 24055443
elacqua@fr.com
John P. Brinkmann
Texas Bar Number 24068091
brinkmann@fr.com
Kathryn Quisenberry
Texas Bar Number 24105639
quisenberry@fr.com
FISH & RICHARDSON P.C.
1221 McKinney Street, Suite 2800
Houston, TX 77010
Telephone: 713-654-5300
Facsimile: 713-652-0109

Betty Chen
Texas Bar Number 24056720
bchen@fr.com
Katherine D. Prescott
California Bar Number 215496
prescott@fr.com
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063

Telephone: 650-839-5070
Facsimile: 650-839-5071

Noah C. Graubart
Georgia Bar Number 141862
graubart@fr.com
Lawrence R. Jarvis
Georgia Bar Number 102116
jarvis@fr.com
FISH & RICHARDSON P.C.
1180 Peachtree Street, NE, 21st Floor
Atlanta, GA 30309
Telephone: 404-582-5005
Facsimile: 404-582-5002

Melissa Smith
Texas Bar Number 24001351
melissa@gillamsmithlaw.com
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone: 903-934-8450
Facsimile: 903-934-9257

**COUNSEL FOR DEFENDANT APPLE INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing was electronically filed with the CM/ECF system per LR 5.1, and that all interested parties are being served with a true and correct copy of these documents via the CM/ECF system on April 28, 2020.

/s/ *Noah C. Graubart*
Noah C. Graubart

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel has complied with the meet and confer requirement in Local Rule CV-7(h) and that this is an opposed motion. The parties have met and conferred multiple times, including Fortress's lead and local counsel Sam Baxter, and Fortress counsel Kevin Schubert and Jennifer Truelove; and Apple's lead counsel, Ruffin Cordell, and Apple's local counsel, Melissa Smith. These conferences took place at on December 19, 2019, April 10, 2020, and April 17, 2020. Fortress has refused to provide the requested discovery. Thus, Apple believes that discussions have ended in an impasse, leaving an open issue for the Court to resolve.

/s/ *Noah C. Graubart*
Noah C. Graubart
