IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| SEVEN NETWORKS, LLC, | § § § | |
| Plaintiff, | § § | Case No. 2:19-CV-115-JRG |
| v. | § § | |
| APPLE, INC. | § § | **JURY TRIAL DEMANDED** |
| Defendant. | § § | |

**SEVEN NETWORKS LLC'S MOTION TO PRECLUDE CERTAIN OPINIONS PROFFERED BY APPLE INC.'S DAMAGES EXPERT JAMES E. MALACKOWSKI**

Plaintiff SEVEN Networks, LLC ("SEVEN") respectfully file this order to preclude certain opinions proffered by Apple, Inc.'s ("Apple") damages expert James E. Malackowski.

## INTRODUCTION

In his July 13, 2020 expert report, Mr. Malackowski concludes that a hypothetical negotiation between SEVEN and Apple would result in SEVEN ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ To support his conclusion, Mr. Malackowski performs two calculations and a "check" that supposedly confirms the reasonableness of his calculations. Both of Mr. Malackowski's calculations are built on numerous, nested assumptions that are unsupported by the evidentiary record and at odds with the applicable law. Because neither calculation withstands scrutiny, an order precluding Mr. Malackowski from misleading the jury with these opinions and the supposed "reasonableness check" that confirms them is appropriate.

## RELEVANT FACTS

Mr. Malackowski is Apple's damages expert. In his July 13 expert report, he proffers both (i) affirmative opinions that purport to quantify the amount of money Apple should be required to pay SEVEN upon a verdict of infringement and validity; and (ii) responsive opinions that purport to address the damages analysis SEVEN has proffered through its own damages expert, Jim Bergman. While all of Mr. Malackowski's opinions are fundamentally flawed, this motion concerns his affirmative opinions only.

To determine the amount of money he allegedly believes Apple should be required to pay SEVEN, Mr. Malackowski performs two different calculations.

**The first calculation.** Mr. Malackowski's first calculation utilizes SEVEN's litigation licenses with ▮▮▮▮▮▮▮▮▮▮. In the first step of his "analysis," Mr. Malackowski takes the amounts of money ▮▮▮▮▮▮▮▮▮▮ respectively, paid SEVEN for a license to SEVEN's

1

worldwide patent portfolio and divides up those amounts by ▮▮▮ respective worldwide market shares, as illustrated below.



Figure 8: ▮▮▮ Equivalent Royalty per Smartphone Market Share Point[361]

*See* Ex. A, Malackowski Report, at 50. Next, Mr. Malackowski (i) multiplies the "Royalty per Smartphone Market Share Point(s)" amount by ▮ a number he claims represents Apple's "Worldwide Market Share Points Attributable to U.S. Sales"; and (ii) discounts the resulting figures by 50%—a number he claims accounts for the value of SEVEN's non-asserted U.S. patents. *Id.* at 51.



Figure 9: Calculation of Hypothetical License to Patents-in-Suit (SEVEN Licenses)[362]

2

Next, Mr. Malackowski takes the lowest number resulting from his calculation, ▮▮▮▮▮ and concludes that Apple ought to pay SEVEN ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

***The second calculation.*** Mr. Malackowski's second calculation utilizes licensing revenue projections prepared in 2016 and 2019 by SEVEN's owner, Fortress Investment Group ("Fortress"). Ex. A at 56. In the first step of his "analysis," Mr. Malackowski takes the amount of money Fortress invested in SEVEN as of 2016 and 2019, respectively. Next, Mr. Malackowski multiplies the investment amounts by ▮ which he asserts is the "return multiple that Fortress told its investors it expected to realize from its SEVEN investment." *Id.* Next, Mr. Malackowski estimates the amount of licensing revenues SEVEN may collect above and beyond Fortress's returned investment, an amount that Fortress would supposedly allow SEVEN to retain as "operating expenses." *Id.* Next, Mr. Malackowski adds the monies to be distributed to Fortress and the monies to be retained by SEVEN, to arrive at the "Total Expected Proceeds from Settlements/Licensing SEVEN Patent Portfolio"—that is, the total amount of money SEVEN and Fortress will supposedly make through licensing activities involving SEVEN's patent portfolio. *Id.* Next, Mr. Malackowski estimates Apple's share of "Remaining Smartphone Manufacturers to be Licensed"—▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—and, based on these calculated shares, derives the purported amount Apple would have to pay for a worldwide license to the SEVEN patent portfolio. *Id.* Next, Mr. Malackowski reduces the consideration Apple would have to pay for a worldwide license based on his belief that the value of SEVEN's U.S. patent portfolio comprises ▮▮▮ of the value of SEVEN's worldwide patent portfolio. Next, Mr. Malackowski discounts the resulting amounts by ▮▮, a figure that he asserts accounts for the value of SEVEN's non-asserted U.S. patents. *Id.* Mr. Malackowski thus concludes that

3

the "Indicated Apple License to the Patents-in-Suit" is either ▮▮▮▮▮▮▮▮ *Id.*
The table that purports to illustrate Mr. Malackowski's second calculation is reproduced below.



Figure 11: Calculation of Hypothetical License to Patents-in-Suit (Fortress Forecasts)[385]

With no explanation, Mr. Malackowski then dismisses the two numbers resulting from his calculations in favor of the aforementioned ▮▮▮▮ figure.

***The "reasonableness check."*** In the final step of his "analysis," to reinforce the soundness of his conclusion that SEVEN should receive no more than ▮▮▮▮ for a license to the patents-in-suit, Mr. Malackowski writes:



*Id.* at 65.

## ARGUMENT

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's opinion in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579

4

(1993). To be admissible, expert testimony must be supported by "more than subjective belief or unsupported speculation." *Paz v. Brush Eng'red Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009). It "must be reliable at each and every step or it is inadmissible. The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia." *Seaman v. Seacor Marine LLC*, 326 F. App'x 721, 725 (5th Cir. 2009).

While the Court should focus solely on the proposed expert's "principles and methodology, not on the conclusions that they generate," *Daubert*, 509 U.S. at 595, "nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert." GE v. Joiner, 522 U.S. 136, 146 (1997). When an expert offers a conclusion "based on assumptions unsupported by the facts of the case," his testimony is inadmissible. *Rolls-Royce Corp. v. Heros, Inc.*, 2010 U.S. Dist. LEXIS 3716, at *6 (N.D. Tex. Jan. 14, 2010).

SEVEN is of course mindful that a *Georgia-Pacific* analysis "may involve some degree of approximation and uncertainty." *VirnetX, Inc. v. Cisco Sys.*, 767 F.3d 1308, 1328 (Fed. Cir. 2014) (citing *Unisplay, S.A. v. Am. Elec. Sign Co.*, 69 F.3d 512, 517 (Fed. Cir. 1995)). Here, however, the two calculations Mr. Malackowski performs to arrive at his conclusion that Apple is owed no more than $7 million are built on numerous assumptions that are unsupported by the record and contrary to the law.

### A. Mr. Malackowski's First Calculation Is Based on Numerous Unfounded Assumptions

Mr. Malackowski's first calculation is the product of numerous assumptions that are irreconcilable with the record.

***Mr. Malackowski fails to account for the fact that the*** ▮▮▮▮▮ ***licenses are settlements.*** In the first step of his calculation, Mr. Malackowski utilizes the consideration paid to SEVEN by ▮▮▮▮▮ in their respective license agreements. Even though both license agreements reflect a settlement of existing litigation, Mr. Malackowski rejects the notion that the consideration SEVEN accepted reflects any kind of litigation discount on account of uncertainty concerning infringement, validity, and enforceability. *See* Ex. B, Malackowski Dep. Rough Tr., at 33-36. During his deposition, Mr. Malackowski asserted that, viewed "holistically," the record establishes the lack of any meaningful litigation discount. *Id.* But none of the supposed facts Mr. Malackowski advanced—deposition testimony by SEVEN's CEO; the "state" or "stage" of the litigation; and Fortress's "sophistication"—supports his conclusion. Indeed, the deposition testimony Mr. Malackowski cited compels the conclusion that SEVEN indeed accepted a discount—albeit one that was not specifically quantified—in connection with the settlements. *See* Ex. A at 54.[1] And Mr. Malackowski himself acknowledged that SEVEN "was asserting a claim for damages that I believe to be *in excess of the licenses* and the counterparties were asserting the proper measure is less than what ended up on the license, *and the license was a market compromise*." Ex. B at 33.

***Mr. Malackowski fails to account for the breadth of SEVEN's infringement accusations against Apple.*** Mr. Malackowski's reliance on the ▮▮▮▮▮ as a baseline for his damages calculation also ignores that Apple is accused of infringing numerous patents that were not at issue in the ▮▮▮▮▮. *See* Ex. B at 46-47 (acknowledging that ▮▮▮▮▮ were not accused of infringing ▮▮▮▮▮ patents-in-

---

[1] Quoting the deposition testimony of SEVEN's CEO, Dr. Ross Bott: "I don't know whether anybody can handicap the risk of winning the district case or -- and the appeals process and all the twists and turns there, and when you -- when one is discussing a discount, one of the parameters within that discount has to be the risk assessment, and that's a bit of a wild card. So I think there may have been kind of an intuitive factoring in, you know, what is our chances, but I don't – I'm not sure there was anything more than that."

6

suit).

*Mr. Malackowski's "Royalty per Smartphone Market Share Point(s)" calculation relies on a fundamental misunderstanding concerning the scope of SEVEN's patent portfolio.* As explained above, Mr. Malackowski's calculation starts from a false premise—that the compensation SEVEN accepted from ▮ does not reflect any type of litigation risk or the much narrower infringement allegations SEVEN made against ▮. But even ignoring the faulty premise of Mr. Malackowki's analysis, his first calculation remains unreliable. This is because at the center of Mr. Malackowski's calculation is his computation of a "Royalty per Smartphone Market Share Point(s)" figure, which he derives by dividing up the amounts ▮ paid SEVEN by ▮ respective *worldwide* market shares. But this allocation makes sense only if a meaningful relationship exists between (i) the patent rights ▮ received from SEVEN; and (ii) the markets in which ▮ sell smartphones. Stated differently, Mr. Malackowski's attempt to allocate the consideration paid by ▮ to various foreign jurisdictions presupposes that ▮ received patent rights from SEVEN in the same foreign jurisdictions. And this is where Mr. Malackowski's analysis falls apart. As Mr. Malackowski acknowledged during his deposition, the largest market for the sale of smartphones is China, a jurisdiction in which SEVEN has *one* issued patent. *See* Ex. B at 40-41. Another very large market in which both ▮ sell smartphones is India, a jurisdiction in which SEVEN has ▮ issued patents. *Id.* at 41. Because there is a fundamental disconnect between the jurisdictions Mr. Malackowski uses to derive his "Royalty per Smartphone Market Share Point(s)" figure and SEVEN's patent coverage in those jurisdictions, Mr. Malackowski's mathematical calculations are inherently unreliable.

B. **Mr. Malackowski's Second Calculation Is Contrary to the Law and Based on Speculation**

If anything, Mr. Malackowski's second calculation is even more speculative. Even putting aside whether the projections of licensing revenue Fortress expects to generate by licensing SEVEN's patent portfolio constitute an appropriate starting point for a *Georgia-Pacific* analysis (and they do not), the central assumption in Mr. Malackowski's analysis is his belief that, because Apple's "share of remaining smartphone manufacturers to be licensed" is at most 17.4%, SEVEN should be obtaining the bulk of the revenue Fortress projected from market players *other than Apple*. *See* Ex. A at 56-57. Not so.

As an initial matter, Mr. Malackowski's theory—that Apple should pay only ▬▬▬ because SEVEN and Fortress can allegedly license SEVEN's patents to numerous other market participants—is wholly inconsistent with 35 U.S.C § 284 and *Georgia-Pacific* framework. The notion that the amount of money Apple ought to pay SEVEN should be offset or dictated by how much money SEVEN can allegedly obtain from *others* simply has no support in the law. It reflects nothing more than Mr. Malackowski's subjective belief and, as such, it is not admissible.

But even putting aside this fundamental infirmity, Mr. Malacowski's calculation is expressly based on speculation and surmise. First, Mr. Malackowski does not even know most of the companies SEVEN could allegedly license to realize Fortress's licensing expectations. Confronted with the fact that Samsung and Apple dominate the market for smartphones, Mr. Malackowski testified as follows:

> Q. So can you list for me the other companies that SEVEN would have to collect money from via licensing to get the $310 million?
>
> A. I don't have a list of those, but I think the premise of your last question was false. It's not limited just to smartphone manufacturers. SEVEN has a portfolio -- a global portfolio of hundreds of patents that span mobile phones, other mobile devices, perhaps watches, server infrastructure, software. The estimate made by Fortress is not limited to smartphones so --. Those other companies really are not

8


> relevant to my analysis. That's what Fortress expected on a global basis for the entire life of the portfolio. So there are new patents in prosecution. Fortress is adding to that with their own ideas. This is a very expansive vision for them. So listing -- I wouldn't know where to begin to list those other companies. I would [r]efer you to Fortress.

*See* Ex. B at 59-60.

Second, Mr. Malackowski's calculation assumes—without any analysis—that all smartphone manufacturers (as well as any number of other unidentified companies) infringe SEVEN's patents, such that SEVEN could in fact license them. Of course, this inferential gap is completely unsupported. Indeed, as Mr. Malackowski illustrates in Exhibit 4.3 to his expert report, two of the largest smartphone manufacturers that remain unlicensed are ███████. *See* Ex. A, Appendix 4.3. During his deposition, however, Mr. Malackowski acknowledged that these two companies sell most of their smartphones in China, a jurisdiction where, as noted, SEVEN has one issued patent. *See* Ex. B at 62. And confronted with the fact that his calculation did not make sense if ███████ were not licensed, Mr. Malackowski retreated and argued that SEVEN could meet Fortress's licensing expectations by demanding more money from other industry participants.[2]

Third, Mr. Malackowski's analysis makes no economic sense. That is, it is based on Mr. Malackowski's interpretation of the amounts SEVEN expected to receive from settlements and licensing, with Apple's allocation represented as its worldwide market share of smartphones. Using this fundamental assumption, however, means that, to the extent someone other than Apple pays *more* than the amount SEVEN expected, Mr. Malackowski's methodology would imply that Apple would should pay *less* because the remaining proceeds to be distributed would

---

[2] Ex. B at 62-63 ("I would expect they would seek to license them, but I don't know that that is required to meet their investment returns. Again the Fortress investment returns are based upon a global portfolio of a variety of products over an extended period of time with their input, so I don't presume that they are going to strike a meaningful license with a Chinese manufacturer. That's not necessary for the analysis.").

be smaller.³ In other words, according to Mr. Malackowski's analysis, the more valuable other companies find SEVEN's patents, the less Apple would have to pay for a license. Indeed, taken at face value, Mr. Malackowski's opinion means that, so long as SEVEN is able to collect $310 million from other market participants, Apple should pay nothing.

Finally, Mr. Malackowski's analysis collapses given his admission during his deposition that the Fortress licensing revenue projections do not contemplate any particular number of licenses, let alone the allocation of licensing proceeds among the alleged licensees:

> Q. Does the analysis contemplate that particular market participants would pay a particular amount of money?
>
> A. Of course. It contemplates that ████████████ paid what they paid.
>
> Q. Right, but for the folks who are yet to be licensed?
>
> A. No.
>
> Q. Do the analyses contemplate any particular number for anyone?
>
> A. It is not necessary to estimate the amount for any other third party. That's not necessarily for the analysis.

Ex. B at 63-64.

Because the opinion Mr. Malackowski reaches through his second calculation is inconsistent with 35 U.S.C § 284 and rests on speculation, it should be excluded.

### C.     Mr. Malackowski's "Reasonableness Check" Should Be Excluded

Because Mr. Malackowski's two primary opinions are inadmissible, the supposed "reasonableness check" he performed on his opinions—a comparison between the number Mr. Malackowski asserts Apple should pay ████████ and the Fortress acquisition price ($20 million)—is similarly inadmissible.

---

³ For example, if ████ paid $10 million more than SEVEN expected, this would reduce the total remaining proceeds by $10 million, which means that Apple would pay 17.4% on the smaller expected amount.

## CONCLUSION

For the foregoing reasons, SEVEN respectfully requests an order precluding Mr. Malackowski from offering the opinions at issue herein.

Date: July 27, 2020                                  Respectfully submitted,

**MCKOOL SMITH, P.C.**

/s/ *Sam Baxter*
Samuel F. Baxter
Lead Attorney
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
MCKOOL SMITH, P.C.
104 East Houston, Suite 300
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Seth R. Hasenour
Texas State Bar No. 24059910
shasenour@mckoolsmith.com
MCKOOL SMITH, P.C.
300 W. 6th Street, Suite 1700
Austin, Texas 78701
Telephone: (512) 692-8704

Radu A. Lelutiu
rlelutiu@mckoolsmith.com
Kevin Schubert
kschubert@mckoolsmith.com
MCKOOL SMITH, P.C.
One Manhattan West
395 Ninth Avenue, 50th Floor
New York, NY 10036
Telephone: (212) 402-9400

Eric Hansen
Texas State Bar No. 19196650
ehansen@mckoolsmith.com

> MCKOOL SMITH, P.C.
> 300 Crescent Court, Suite 1500
> Dallas, Texas 75201
> Telephone: (214) 978-4000
>
> **ATTORNEYS FOR PLAINTIFF, SEVEN NETWORKS, LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing was electronically filed with the CM/ECF system per LR 5.1, and that all interested parties are being served with a true and correct copy of these documents via the CM/ECF system on July 27, 2020.

> /s/ *Jennifer Truelove*
> Jennifer Truelove

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel has complied with the meet and confer requirement in Local Rule CV-7(h) and that this is an opposed motion. The parties held a meet and confer on July 23, 2020 with SEVEN's lead and local counsel (Sam Baxter) and Apple's lead and local counsel (Ruffin Cordell and Melissa Smith) present. The parties were unable to resolve their dispute concerning Mr. Malackowski's opinions.

> /s/ *Sam Baxter*
> Sam Baxter

## CERTIFICATE OF AUTHORIZATION TO SEAL

I hereby certify that pursuant to the protective order the above-captioned case, this motion and/or the exhibits thereto contain confidential information. Accordingly, this document is to be filed under seal.

/s/ *Jennifer Truelove*
Jennifer Truelove

13